Paul R. CARLSON, Relator,

v.

AUGSBURG COLLEGE, Respondent,

Commissioner of Economic
Security, Respondent.

No. C0–99–1016.

Court of Appeals of Minnesota.

Jan. 25, 2000.

Paul R. Carlson, Lincoln, NE, pro se relator.

Augsburg College, c/o Human Resources, Minneapolis, respondent.

Kent E. Todd, Minnesota Department of Economic Security, St. Paul, for Commissioner.

Considered and decided by SHORT, Presiding Judge, PETERSON, Judge, and ANDERSON, Judge.

## OPINION

### G. BARRY ANDERSON, Judge.

The commissioner's representative disqualified relator Paul Carlson from receiving reemployment insurance benefits until the week ending May 1, 1999, ruling that Carlson received deductible severance pay in lieu of notice. We affirm.

## FACTS

Relator Paul Carlson worked for respondent Augsburg College from January 1998 to January 19, 1999, as vice president of financial administration. He earned approximately $87,500 per year. Augsburg asked Carlson to resign stating that his management style did not fit the goals of the college.

Carlson and Augsburg negotiated the compensation Carlson would receive in exchange for his resignation. The parties reduced their agreement to a written separation agreement. The separation agreement provided that Carlson would receive payment equal to his salary, paid at regular intervals, through May 31, 1999; $7,000; and $252 to purchase long-term disability insurance.

During negotiations, Augsburg offered Carlson "severance" pay. Carlson requested that the payment be called "settlement" pay. In an April 24, 1999 letter to the commissioner's representative, Carlson explained that he requested use of the term "settlement" for two reasons: (1) he was receiving payment in exchange for releasing Augsburg from liability for potential claims, and (2) counsel advised him that settlement pay does not reduce reemployment insurance benefits. In an April 28, 1999 letter to the Department of Economic Security, Augsburg's human resources director, Lora Steil, wrote that the general release was a condition of the severance package. Steil also wrote that while Augsburg did not object to Carlson's request that the payment be called a settlement payment, Augsburg viewed it as severance pay.

Carlson applied for reemployment insurance benefits. But the Department of Economic Security declared him ineligible, finding that he received deductible severance pay. Carlson appealed. After a hearing before a reemployment insurance judge, the department again declared him ineligible to receive benefits until the week ending May 1, 1999, on the ground that he received deductible severance pay. Carlson then appealed to the commissioner's representative, who affirmed the decision of the reemployment insurance judge. Carlson appeals to this court.

## ISSUE

Did the commissioner's representative commit error in concluding that Carlson was ineligible to receive reemployment insurance benefits because he received deductible severance pay?

## ANALYSIS

Whether an employee was properly disqualified from receiving benefits is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros., Inc.*, 346 N.W.2d 159, 161 (Minn.1984). The commissioner's representative's findings of fact should be reviewed in the light most favorable to the decision and should not be disturbed if there is evidence in the record that reasonably tends to sustain them. *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989). The determination of whether an employee was properly disqualified from receiving benefits is, however, a question of law upon which this court may exercise its independent judgment. *Id.*

Individuals must meet certain eligibility requirements before reemployment benefits are paid. Minn.Stat. § 268.085 (1998). A claimant is not eligible for benefits during any week in which he is receiving "termination, severance, or dismissal payment or wages in lieu of notice." Minn. Stat. § 268.085, subd. 3(1). Severance payments are deductible from unemploy-

ment compensation benefits during the first four weeks of payment and during one-half of the total number of any additional weeks of payment. *Id.*

The commissioner's representative found that (1) Carlson was offered a severance package in lieu of notice consisting of four and one-half month's salary, $2,000 for out-placement services, and $5,000 cash; (2) Carlson asked Augsburg to call the package a "settlement payment" and not a "severance payment" after learning from his attorney that settlement pay would not affect his claim for reemployment insurance benefits; and (3) Augsburg agreed to change the language but continued to view the package as a severance payment in lieu of notice.

■ This court must determine whether the evidence in the record reasonably supports the commissioner's representative's decision. *Ress,* 448 N.W.2d at 523. The separation agreement provides for payment to Carlson equal to his salary, paid at regular intervals, through May 31, 1999. The agreement also provides for cash payment to Carlson of $7000. The parties testified before the reemployment insurance judge that this figure was arrived at by adding $5000 owed to Carlson as part of his compensation package for 1998 and $2000 for out-placement services. Steil testified that the respondent offered Carlson severance pay, which it viewed as payment in lieu of notice. Both parties testified that Carlson asked respondent to change the word "severance" to "settlement" and respondent agreed to do so. Steil testified that despite the language change, respondents still viewed the payment as severance pay in lieu of notice.

In an April 24, 1999 letter to the commissioner's representative, Carlson explained that he requested use of the term "settlement" for two reasons: (1) he was receiving payment for releasing Augsburg from liability for potential claims, and (2) counsel advised him that settlement pay would not reduce reemployment insurance benefits. In an April 28, 1999 letter to the Department of Economic Security, Steil

wrote that the general release was a condition of the severance package, and, while Augsburg did not object to Carlson's request that the payment be called a settlement payment, Augsburg viewed the payment as severance pay.

The commissioner's representative concluded that the payment to Carlson was clearly severance pay in lieu of notice that is deductible from his reemployment insurance benefits. The commissioner's representative found Carlson's request to change the language in the drafted agreement from "severance" to "settlement" a "specious" attempt to collect reemployment insurance that is "totally lacking in merit."

■ As a matter of first impression, this court addresses whether use of the term "settlement" payment in a separation agreement renders that payment deductible under Minn.Stat. § 268.085, subd. 3(1), as a severance payment or wages in lieu of notice. This court will defer to an agency's interpretation of its own statutes unless such interpretation is in conflict with the express purpose of the statute and the legislature's intent. *Lemmerman v. ETA Sys., Inc.* 458 N.W.2d 431, 433 (Minn.App. 1990). The legislature established the reemployment benefits system with the focus of "providing a temporary partial wage replacement to assist the unemployed worker to become reemployed." Minn. Stat. § 268.03, subd. 1 (1998). Consistent with this focus, a claimant is ineligible to receive reemployment insurance benefits during any week in which the claimant is receiving payment

> in an amount equal to or in excess of the claimant's weekly benefit amount in the form of termination, severance, or dismissal payment or wages in lieu of notice.

Minn.Stat. § 268.085, subd. 3(1).

■ Section 268.085 does not define the term "severance payment." Severance pay means "[a] sum of money usually based on length of employment for which an employee is eligible upon termination." *The American Heritage Dictionary* 1652

(3d ed.1992). If statutory language is plain and unambiguous, this court must give it its plain meaning. *In re Welfare of J.M.*, 574 N.W.2d 717, 721 (Minn.1998) (citations omitted). Here, appellant received payment from his employer equal to his salary, at regular intervals, through May 1999. In view of the evidence in the record, the commissioner's representative did not clearly err in determining that Carlson collected "severance" pay within the meaning of Minn.Stat. § 268.085, subd. 3.

## DECISION

Because the commissioner's representative's determination that Carlson received severance pay is not clearly erroneous, and it is clear under Minn.Stat. § 268.085 that severance pay is deductible, Carlson was properly disqualified from receiving benefits until the week ending May 1, 1999.

**Affirmed.**